ESTATE OF GRAVES, APPELLEE, *v*. CITY OF CIRCLEVILLE;

SHAW ET AL., APPELLANTS.

[Cite as *Estate of Graves v. Circleville*, 124 Ohio St.3d 339, 2010-Ohio-168.]

*Torts — Liability of employees of political subdivision — R.C. 2744.03 — The*
    *public-duty rule is not applicable in civil actions brought against*
    *employees of political subdivisions for wanton or reckless conduct.*

(No. 2009-0014 — Submitted November 3, 2009 — Decided January 28, 2010.)

APPEAL from the Court of Appeals for Ross County, No. 06CA2900,

179 Ohio App.3d 479, 2008-Ohio-6052.

_____

SYLLABUS OF THE COURT

The public-duty rule adopted by this court in *Sawicki v. Ottawa Hills* (1988), 37
    Ohio St.3d 222, 525 N.E.2d 468, is not applicable in civil actions brought
    against employees of political subdivisions for wanton or reckless
    conduct.

_____

O'CONNOR, J.

{¶ 1} This appeal involves the availability of the public-duty rule as a
defense to liability of employees of a political subdivision. Appellants,
Circleville Police Department Officers Peter Shaw, William Eversole, and Ben
Carpenter[1] ("the officers"), assert that the public-duty rule governs the issue
whether an employee of a political subdivision performing his job owes a duty to

_____

1. Ben Carpenter was designated as a police officer in the pleadings and has been referred to as an
officer throughout the proceedings below. Carpenter clarified during his discovery deposition that
he has never been certified as a police officer and that he was a dispatcher at the time of the events
that occurred in this case. However, for ease of reference, officer Shaw, officer Eversole, and
dispatcher Carpenter will collectively be referred to as "the officers."

an individual member of the public. The officers additionally argue that the wanton-and-reckless-conduct exception to immunity in R.C. 2744.03(A)(6)(b) is not an exception to, and did not repudiate, the public-duty rule.

{¶ 2} Conversely, appellee, the estate of Jillian Marie Graves, contends that the public-duty rule does not protect employees of political subdivisions from liability for wanton and reckless misconduct. The estate further submits that R.C. 2744.03 abrogated the public-duty rule to the extent that the rule protects from liability employees who engage in wanton and reckless conduct.

{¶ 3} We hold that the public-duty rule adopted by this court in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, is not applicable in civil actions brought against employees of political subdivisions for wanton or reckless conduct. Because the estate alleges more than mere negligence and asserts that the officers acted in a wanton and reckless manner, the public-duty rule adopted in *Sawicki* is not an available defense for the officers. We therefore affirm the judgment of the court of appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

**Relevant Background**

{¶ 4} This matter arises from the events leading to an automobile collision that resulted in the deaths of Cornelius Copley and Jillian Graves. On July 4, 2003, Officer Shaw arrested Copley for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and driving under suspension in violation of former R.C. 4507.02(D)(2). Copley was released from jail the following afternoon by Officer Eversole. Copley returned to the police station later that afternoon to retrieve his vehicle. Officer Carpenter examined the tow log and, finding no "hold" on Copley's vehicle, authorized the release of Copley's vehicle. The next morning, on July 6, 2003, Copley drove his vehicle while intoxicated and collided with Graves's vehicle. Both of them were killed in the accident.

**{¶ 5}** The estate filed suit against the officers, alleging that they had breached their duty to Graves by failing to remove Copley's license plates from his vehicle and by releasing the vehicle to him.[2] More specifically, the estate claimed that (1) R.C. 4507.38 required that Copley's vehicle be held until his initial court appearance because he had been charged with driving on a suspended license and (2) R.C. 4511.195 required that Copley's vehicle remain impounded because he had been convicted of operating a motor vehicle under the influence of alcohol ("OMVI") within the prior six-year period. The estate alleged that the officers were aware that Copley was a recidivist drunk driver who was driving on a suspended license and that the officers violated the law by allowing Copley to obtain his vehicle from the impound lot. The estate further alleged that the officers acted wantonly, recklessly, and with complete disregard for the foreseeable consequences of their actions and thus were liable under R.C. Chapter 2744.

**{¶ 6}** The officers moved for summary judgment, arguing that (1) they owed no duty to Graves under the public-duty rule and (2) they were immune from liability because there is no evidence that they acted wantonly or recklessly. The trial court did not address the public-duty rule but found that the matter was governed by the immunity statute, R.C. Chapter 2744. In construing the evidence most strongly in the estate's favor, the trial court determined that there was a genuine issue of material fact as to whether the officers acted in a wanton and reckless manner. The trial court therefore denied summary judgment.

---

2. Graves's estate originally filed a complaint against the city of Circleville and John and Jane Doe, officers of the Circleville Police Department. The officers were not identified before the trial court dismissed the complaint, holding that the officers and the city were immune. The estate identified the officers only after the Fourth District Court of Appeals held that the trial court had erred in dismissing the case against the officers because the estate had alleged sufficient facts supporting its claims of wanton and reckless conduct that, if proved, could overcome the officers' immunity. *Estate of Graves v. Circleville*, Ross App. No. 04CA2774, 2005-Ohio-929, ¶ 28. The Fourth District affirmed the trial court's judgment in favor of the city, holding that the city was engaged in a governmental function and was thus immune from liability for negligence. Id. at ¶ 1.

**{¶ 7}** On appeal to the Fourth District Court of Appeals, the court affirmed. *Estate of Graves v. Circleville*, 179 Ohio App.3d 479, 2008-Ohio-6052, 902 N.E.2d 535. In addressing whether the officers owed a duty to Graves, the Fourth District found that the public-duty rule remains viable but concluded that the rule does not apply in the context of wanton or reckless conduct. Id. at ¶ 23 and 25. The court of appeals agreed that genuine issues of material fact remained whether the officers acted wantonly or recklessly and whether their conduct proximately caused Graves's death.

**{¶ 8}** The case is now before us on our acceptance of a discretionary appeal to determine whether the public-duty rule bars a holding of liability against the officers. *Estate of Graves v. Circleville,* 121 Ohio St.3d 1439, 2009-Ohio-1638, 903 N.E.2d 1222.

### Analysis

#### A. The Public-Duty Rule Adopted in Sawicki v. Ottawa Hills

**{¶ 9}** In *Sawicki*, we adopted the public-duty rule, a doctrine that "originated at English common law and was particularly applied to the office of sheriff." *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 229, 525 N.E.2d 468. Under the public-duty rule, a municipality owes a duty only to the general public when performing functions imposed on it by law, and therefore it is not liable for a breach of that duty resulting in harm to an individual absent a special duty owed to the injured person. Id. at 230; *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 13.

**{¶ 10}** In *Sawicki*, we followed the New York Court of Appeals and adopted a special-duty exception to the public-duty rule. *Sawicki*, 37 Ohio St.3d at 231-232, 525 N.E.2d 468, citing *Cuffy v. New York* (1987), 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937. In order for the special-duty exception to apply, "the following elements must be shown to exist: (1) an assumption by the

4

municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." Id. at paragraph four of the syllabus.[3]

### B. Applicability of the Public-Duty Rule

**{¶ 11}** In their first and second propositions, the officers aver that the wanton-and-reckless-conduct exception to immunity in R.C. 2744.03(A)(6)(b) does not defeat application of the public-duty rule. The officers contend that the general duties established by R.C. 4507.38 and 4511.195 are owed to the public as a whole rather than to specific individuals. The officers maintain that in accordance with the public-duty rule, they cannot be liable to the estate for a duty owed only to the general public. We disagree and hold that the public-duty rule is not applicable in this case.

#### 1. The narrow context in which *Sawicki* was decided

**{¶ 12}** In determining whether the public-duty rule is an available defense in this case, we must review the context in which the rule was adopted. The events giving rise to *Sawicki* occurred on September 17, 1981. *Sawicki*, 37 Ohio St.3d at 222, 525 N.E.2d 468. However, before this court's opinion in *Sawicki* was issued on June 29, 1988, the General Assembly enacted the Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, which became effective on November 20, 1985. R.C. Chapter 2744 is the General Assembly's response to the judicial abrogation of common-law sovereign immunity. Its manifest purpose is the preservation of the fiscal integrity of political

---

3. The estate does not assert that the special-duty exception to the public-duty rule applies in this case.

subdivisions.  *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105.

{¶ 13} In *Sawicki*, this court emphasized the fact that the events fell within the gap period between the "time when this court had, in a series of divided opinions, judicially abrogated the application of the doctrine of sovereign immunity as a defense for municipal corporations" and the enactment of R.C. Chapter 2744.  *Sawicki*, 37 Ohio St.3d at 225, 525 N.E.2d 468.  Thus, this court stressed that if the facts giving rise to the case had occurred after R.C. Chapter 2744's effective date, the immunity statute likely would have immunized the village of Ottawa Hills from any liability deriving from the actions of its police officers.  Id.  It is within this very limited context that we adopted the public-duty rule.

{¶ 14} Indeed, in *Wallace,* this court reaffirmed that *Sawicki* was limited in its application in terms of timing.  *Wallace* analyzed whether the public-duty rule was compatible with the language of R.C. Chapter 2743 (the chapter that established the Court of Claims).  *Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 19.  In answering that question, we specifically noted, "*[W]ere we deciding this case in the same context in which we decided Sawicki— in an immunity vacuum and applying purely common-law principles—we might* be more willing to decide that the public-duty rule 'comport[s] with the principles of negligence' by aiding the court in a determination of whether a duty imposed upon a public employee 'may encompass the duty upon which negligence is premised.'  * * *  But unlike in *Sawicki*, our analysis of common-law negligence principles here is tempered by statutory dictates."  (Emphasis added.)  Id. at ¶ 25.

{¶ 15} With this limitation in mind, we held in *Wallace* that "[t]he public-duty rule is incompatible with R.C. 2743.02(A)(1)'s express language requiring that the state's liability in the Court of Claims be determined 'in accordance with

the same rules of law applicable to suits between private parties.' " Id. at paragraph one of the syllabus.

{¶ 16} We further cautioned: "Insofar as *Sawicki* dealt only with municipal liability, we have no occasion to overrule it or any of our decisions applying the public-duty rule to actions *not* brought under R.C. Chapter 2743. Various courts of appeals, however, have considered *Sawicki* (among other cases) to have been legislatively superseded by the General Assembly's enactment of R.C. Chapter 2744. See, e.g., *Sudnik v. Crimi* (1997), 117 Ohio App.3d 394, 397, 690 N.E.2d 925; *Franklin v. Columbus* (1998), 130 Ohio App.3d 53, 59-60, 719 N.E.2d 592; *Amborski v. Toledo* (1990), 67 Ohio App.3d 47, 51, 585 N.E.2d 974." (Emphasis sic.) *Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 39, fn. 13. Thus, the *Wallace* court explicitly recognized that *Sawicki* was decided at a time that sovereign immunity was not available as a defense and thus suggested that the public-duty rule may be incongruous with R.C. Chapter 2744.

{¶ 17} Most recently, in *Yates v. Mansfield Bd. of Edn.,* we again affirmed that the public-duty rule arose under narrow circumstances when distinguishing our decision in *Brodie v. Summit Cty. Children Servs. Bd.* (1990), 51 Ohio St.3d 112, 554 N.E.2d 1301, a case that arose in the same gap period as the events in *Sawicki*. *Yates*, 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, ¶ 32, fn. 2 ("*Brodie*, 51 Ohio St.3d 112, 554 N.E.2d 1301, arose out of events that occurred during that twilight period in the early 1980s when the doctrine of municipal immunity had been judicially abolished, R.C. Chapter 2744, 141 Ohio Laws, Part I, 1699, 1743, was not yet effective, and the public-duty rule was clearly viable").[4]

---

4. While we noted in *Yates* that the public-duty rule remained viable as applied to actions brought against political subdivisions pursuant to R.C. Chapter 2744, that issue was not before us in *Yates*. Moreover, this court did not comment on the viability of the public-duty rule in cases against an employee of a political subdivision who is alleged to have acted wantonly or recklessly.

{¶ 18} Our analysis in *Sawicki* and its progeny lead to the conclusion that the public-duty rule espoused in *Sawicki* does not apply in the instant case. This matter arose out of an incident that occurred in July 2003, well after the General Assembly's enactment of R.C. Chapter 2744. We consistently have emphasized the vacuum in which *Sawicki* was decided, and we reaffirm those pronouncements today.

{¶ 19} We adopted the public-duty rule at a time when there was no immunity for a political subdivision or its employees. If the immunity now afforded by R.C. Chapter 2744 had been a viable defense for the village of Ottawa Hills in *Sawicki*, Ottawa Hills would have been immune from the plaintiffs' claims of negligence. *Sawicki*, 37 Ohio St.3d at 225, 525 N.E.2d 468. The public-duty rule became a relevant consideration only because Ottawa Hills did not have blanket immunity.

{¶ 20} Political subdivisions and their employees now have statutory immunity. Thus, the rationale behind this court's adoption of the public-duty rule in *Sawicki* is no longer compelling. Moreover, *Sawicki* did not address whether the public-duty rule was available as a defense for employees of a political subdivision, and we have never applied the rule in a case involving allegations of wanton and reckless conduct against an employee of a political subdivision. Because the events in this case occurred outside of the narrow time frame under which *Sawicki* was decided, the public-duty rule adopted in *Sawicki* does not apply.

2. R.C. 2744.03(A)(6)(b)'s wanton-and-reckless-conduct
exception to immunity

{¶ 21} Our holding adheres to our deference to valid legislative enactments and is consistent with R.C. Chapter 2744's purpose. By enacting R.C. Chapter 2744, the legislature clearly rejected the judicial abrogation of common-law sovereign immunity and provided broad statutory immunity to political

subdivisions and their employees, subject to certain exceptions. *Wilson*, 70 Ohio St.3d at 452-453, 639 N.E.2d 105; R.C. 2744.02 et seq. One of the stated exceptions is that an employee of a political subdivision is not immune from liability when the employee's acts or omissions are "manifestly outside the scope of the employee's employment or official responsibilities," or are taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(a) and (b). A holding that the public-duty rule — a common-law principle — bars liability of an employee who allegedly has acted in a wanton or reckless manner would contravene an unambiguous statutory mandate and render R.C. 2744.03(A)(6)(b) meaningless.

{¶ 22} Our rejection of the public-duty rule in this case corresponds with our decision in *Wallace* that the public-duty rule was incompatible with R.C. 2743.02(A)(1). The same rationale applies in this case. As we stated in *Wallace*, "our analysis of common-law negligence principles here is tempered by statutory dictates." *Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 25. It logically follows that application of the public-duty rule in a lawsuit against an employee of a political subdivision who is alleged to have acted wantonly or recklessly is tempered by the legislative dictate in R.C. 2744.03(A)(6)(b) that an employee who acts wantonly or recklessly has no immunity.[5]

2. Preservation of public policy

---

5. Several other jurisdictions reject the application of the public-duty rule when allegations of wanton, reckless, or egregious conduct are alleged. The Tennessee Supreme Court does not apply the public-duty rule in cases involving allegations of reckless conduct. *Ezell v. Cockrell* (Tenn.1995), 902 S.W.2d 394, 402. In Rhode Island, an exception to the public-duty doctrine exists when the state or its political subdivisions engage in egregious conduct. *L.A. Ray Realty v. Town Council of Cumberland* (R.I.1997), 698 A.2d 202, 208. A similar exception to the public-duty rule is recognized by the Connecticut Supreme Court if the complaint alleges malice, wantonness, or intent to injure, rather than negligence. *Gordon v. Bridgeport Hous. Auth.* (1988), 208 Conn. 161, 167, 544 A.2d 1185, citing *Shore v. Stonington* (1982), 187 Conn. 147, 155, 444 A.2d 1379, and *Stiebitz* v. *Mahoney* (1957), 144 Conn. 443, 448-449, 134 A.2d 71.

**{¶ 23}** Our determination that the public-duty rule is inapplicable to lawsuits alleging wanton and reckless conduct against political subdivision employees preserves the public policy that justified our adoption of the rule – maintaining the integrity of public finance and the necessity of avoiding judicial intervention into policy decisions. *Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 32. The General Assembly, however, legislatively sets forth the public policy of this state. That policy, as expressed in R.C. Chapter 2744, permits suits against employees of political subdivisions who engage in wanton and reckless conduct. As we noted in *Wallace*, we will not "engraft the public-duty rule as an additional limitation on liability that the General Assembly has not provided." *Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 33. This rationale is even more appropriate here because application of the rule would directly contravene the legislature's expressed policy. "It is not this court's role to apply a judicially created doctrine when faced with statutory language that cuts *against* its applicability." (Emphasis sic.) Id.

**{¶ 24}** Finally, it bears emphasis that like our rejection of the public-duty rule's application to suits in the Court of Claims in *Wallace*, our rejection of the doctrine in this case "does not automatically open the floodgates to excessive governmental liability." Id. at ¶ 37. The absence of the public-duty rule will not automatically result in the creation of new duties and new causes of action. Id. Claimants who seek recovery in actions such as the present one based on purely statutory violations must still establish that the statute in question provides for a private right of action. Id.

**{¶ 25}** By way of example, in the present case, the estate must demonstrate that recovery is permissible against the officers for violating either R.C. 4507.38 or R.C. 4511.195. In other words, even though the public-duty rule does not repudiate the existence of a duty, the estate nevertheless has the burden of establishing that the officers owed Graves an actionable duty under R.C.

4507.38 and/or R.C. 4511.195.[6]  If a claimant cannot establish the existence of a duty, the political subdivision's employee is insulated from liability even in the face of allegations of wanton and reckless conduct.  We believe that the public-policy objectives in adopting the public-duty rule remain safeguarded in the wake of this court's ruling.

{¶ 26} In summary, the public-duty rule adopted by this court in Sawicki does not apply to the case at bar.  The public-duty rule adopted in *Sawicki* is restricted in its application and is not an available defense to the estate's claims that the officers acted wantonly and recklessly by allowing Copley to retrieve his vehicle.

### C.  Abrogation of the Public-Duty Rule

{¶ 27} In their third proposition, the officers urge this court to hold that the public-duty rule remains viable and has not been abrogated by the enactment of R.C. Chapter 2744 and its exception for wanton and reckless conduct.  This proposition is rendered moot by virtue of our resolution of the first and second propositions of law.

### Conclusion

{¶ 28} For the foregoing reasons, we hold that the public-duty rule adopted by this court in Sawicki *v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, is not applicable in civil actions brought against employees of political subdivisions for wanton or reckless conduct.  The estate alleges more than mere negligence and claims that the officers acted in a wanton and reckless manner.  The public-duty doctrine adopted in *Sawicki* is therefore not available as a defense for the officers in the case sub judice.  We affirm the judgment of the

---

6. Because this appeal presents us with only the narrow legal issue of whether the public-duty rule is applicable, we express no opinion regarding whether an actionable duty was owed by the officers or whether their conduct was wanton or reckless.

court of appeals and remand this matter to the trial court for further proceedings consistent with this court's opinion.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs separately.

_____

**PFEIFER, J., concurring.**

{¶ 29} I concur in the syllabus and in most of the majority opinion. I am especially pleased that the majority opinion has limited the application of the public-duty doctrine as enunciated in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, to a time and place now in the past. See *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 42 (Douglas, J., concurring) (the public-duty rule "has no efficacy or relevance in Ohio"). I look forward to the day when a majority of this court will say the same concerning sovereign immunity. See *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 38-40 (Pfeifer, J., dissenting); *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (Pfeifer, J., concurring).

{¶ 30} I do not join in section B3 of the majority opinion, because it is not necessary to the resolution of the issue before us. Having determined that the public-duty doctrine is not applicable to the case before it, this court should not discuss other issues that might be applicable to the case. The parties and the trial judge need to concern themselves with the issues to be argued in the trial that will likely take place; we should not.

_____

Cooper & Elliott, L.L.C., Rex H. Elliott, Charles H. Cooper Jr., and John C. Camillus, for appellee.

Mazanec, Raskin, Ryder & Keller Co., L.P.A., John T. McLandrich, James A. Climer, and Frank H. Scialdone, for appellants.

Joseph M. Hegedus, urging reversal for amicus curiae Ohio Patrolmen's Benevolent Association.

Subashi & Wildermuth, Brian L. Wildermuth, and Halli J. Brownfield, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Isaac, Brant, Ledman and Teetor, L.L.P., Mark Landes, and Andrew N. Yosowitz, urging reversal for amici curiae County Commissioners' Association of Ohio, Ohio School Boards Association, Public Children Services Association of Ohio, Ohio Job and Family Services Directors' Association of Ohio, County Risk Sharing Authority, Ohio Township Association, and Ohio Association of Behavioral Health Authorities.

Kitrick, Lewis & Harris Co., L.P.A., and Mark M. Kitrick, urging affirmance for amicus curiae Ohio Association for Justice.

————————————